**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-2074-WJM-NRN

LE'ONSHA SCOTT,

    Plaintiff,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT**

---

In this insurance coverage dispute, Plaintiff Le'Onsha Scott ("Scott") and Defendant Nationwide Agribusiness Insurance Company ("Nationwide") filed cross motions for summary judgment (ECF Nos. 17, 29) on Scott's declaratory judgment claim seeking indemnification (ECF No. 1 at 5). Scott and Nationwide both filed responses opposing the other's summary judgment motion. (ECF Nos. 21, 32, 33.) For the following reasons, the Court grants summary judgment in Nationwide's favor and denies Scott's cross motion for summary judgment.

## I. MATERIAL FACTS

The following material facts are undisputed by the parties.

In April 2018, Ellen Cahill and Scott got into a car accident, resulting in substantial injuries to Scott. (ECF No. 29 at 2; ECF No. 17 at 4.) Cahill admitted she was at fault. (ECF No. 29 at 2.) At the time of the accident, Cahill was insured by two car insurance policies: (1) The Hartford, with maximum liability limits of $25,000; and (2)

Nationwide,[1] with maximum liability limits of upwards of $250,000.  (*Id.*; ECF No. 17 at 2.)  Specifically, Cahill was an insured under Nationwide's policy because she lived with her son, a named insured, and the policy extended coverage to "relatives," *i.e.*, "one who regularly resides in [the named insureds'] household and who is related to you by blood, marriage, or adoption (including a ward or faster child)."  (*Id.* at 3.)  The Nationwide policy obligated it to pay for damages resulting from accidents caused by its insureds and that arose out of the use of "your auto."  (ECF No. 17 at 2.)  The policy defined "your auto" as "the vehicle(s) described in the Declarations."  (*Id.* at 3.)  The Declarations[2] named two covered vehicles: a 2009 Hyundai Sonata and a 2017 BMW 540xi.  (*Id.*)  Cahill was not driving either of these vehicles at the time of the accident.  (*Id.* at 4.)  As a result, Nationwide denied Scott's claim for coverage.  (*Id.*)  Scott and Cahill agreed to take their dispute to arbitration, whereby Scott was awarded $25,000 pursuant to The Hartford policy and $424,140.26 for her injuries.  (*Id.*)  Scott then received a judgment for $424,140.26 in Denver District Court.  (*Id.*)

## II. PROCEDURAL HISTORY

In August 2022, Scott filed a complaint in this Court, seeking declaratory judgment against Nationwide for indemnification of the $424,140.26 judgment.  (*Id.*; ECF No. 1 at 5.)

In April 2023, Nationwide moved for summary judgment on Scott's declaratory

---

[1] Scott spends a lot of time insisting that Cahill is an insured under Nationwide's policy. (*See generally* ECF Nos. 29, 33.)  But Nationwide concedes that Cahill is an insured under the "relative" provision of its policy.  (ECF No. 32 at 2.)  The question in this case is thus not whether she is an insured but rather whether the policy's vehicle exclusion violates Colorado law.

[2] The policy also extends coverage to other vehicles, but those circumstances are not at issue here.  (ECF No. 17 at 3.)

2

judgment claim, arguing that, while Cahill was an insured under the policy, Nationwide was nonetheless not required to indemnify Scott for the $424,140.26 judgment because Cahill was not driving an "insured vehicle" under the policy. (ECF No. 17 at 2.) In Nationwide's view, "no Colorado statute requires a liability insurer like Nationwide to provide coverage for an insured when the insured is operating a non-covered vehicle." (*Id.*) Scott filed a response to Nationwide's summary judgment motion. (ECF No. 21.)

In May 2023, Scott filed a cross motion for summary judgment, arguing that Nationwide's policy provision purporting to cover only those vehicles named in the policy is "void and invalid as against public policy." (ECF No. 29 at 7.) In Scott's view, "Colorado [c]ourts have consistently rejected policy language that excludes coverage for insureds based on the vehicle they were driving at the time of the collision, including under our current statutory scheme." (*Id.* at 13.) Nationwide filed a response to Scott's cross-motion (ECF No. 32), to which Scott filed a reply (ECF No. 33).

The Court sides with Nationwide. The Colorado General Assembly has passed statutes contemplating that insurers may issue policies excluding coverage based on what vehicle is involved in an accident. Similarly, Colorado courts applying these statutes have all but directly held that insurers may include such vehicle-based coverage exclusions in their policies. The cases on which Scott relies to argue otherwise are inapposite here—indeed, they pertain to the uninsured/underinsured motorist ("UM/UIM") context, and the Court is not persuaded that those principles should apply in the liability context. Thus, because Nationwide's policy unambiguously does not provide liability coverage for the accident, and its policy does not violate Colorado law, the Court grants summary judgment in its favor.

### III. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### IV. ANALYSIS

The parties agree that Cahill was an insured under Nationwide's policy. (ECF No. 32 at 2.) The parties likewise agree that Nationwide's policy unambiguously does not cover losses arising out of accidents involving a vehicle not named in its policy. (*See* ECF No. 33 at 1 ("Plaintiff admits that the policy language was unambiguous as to the requirement that Ms. Cahill needed to be driving a vehicle listed on the Policy Declarations in order to receive liability coverage.").) The parties disagree, however, as to the following: Does Nationwide's vehicle-based coverage exclusion violate Colorado

law?  (*See id.* at 1–2 ("[I]t is Plaintiff's position that [the vehicle-based coverage exclusion] is contrary to Colorado public policy . . . .").)  The Court concludes that the answer is no.

### A.    Applicable Law

"The interpretation of an insurance policy presents a question of law that [the Court] review[s] de novo."  *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 820 (Colo. App. 2007).  The Court construes insurance policies to give effect to the intent of the parties.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 2017 COA 6, ¶ 6.

"Unambiguous provisions of an insurance contract must be construed to give effect to their plain meaning."  *Am. Fam. Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991).  The Court reads the provisions of a policy as a whole and may neither add provisions to extend coverage beyond that contracted for nor delete them to limit coverage.  *Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 595 (Colo. App. 2011).  Coverage exclusions are construed against the insurer because such clauses must be drafted in clear and specific language.  *Id.*

Even if an insurance policy provision "is unambiguous and negates coverage by its clear terms," however, "it may nevertheless be rendered void and unenforceable if it violates public policy by attempting to dilute, condition, or limit coverage mandated" by statute.  *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 75 (Colo. App. 2010); *see also DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 173 (Colo. 2001).  In determining whether a policy violates statutory mandates, the Court looks to the plain language of the statute.  *DeHerrera*, 30 P.3d at 173.

The Court interprets statutes de novo and strives to adopt the statutory

5

construction that best effectuates the legislative purposes.  *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1102 (Colo. 2011).  To determine the legislative intent, the Court looks to the plain language of the statute, giving the language its commonly accepted and understood meaning.  *Grippin v. State Farm Mut. Auto. Ins. Co.*, 2016 COA 127, ¶ 10.  When the plain language of the statute is clear and unambiguous, the Court applies the statute as written.  *Ryser v. Shelter Mut. Ins. Co.*, 2019 COA 88, ¶ 26, *aff'd on other grounds*, 2021 CO 11.  The Court "consider[s] the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to all its parts."  *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 661 (Colo. 2011).

**B.     Application**

Scott contends that Nationwide's vehicle-based coverage exclusion is void because it dilutes statutorily mandated insurance coverage.  (ECF No. 29 at 11, 14.)  To get there, she relies on the definition of "insured" in section 10-4-601(5), C.R.S. 2023.  (*Id.*)  That statute defines "insured" as "the named insured, *relatives of the named insured who reside in the same household as the named insured*, and any person using the described motor vehicle with the permission of the named insured."  § 10-4-601(5) (emphasis added).  Relatedly, section 10-4-601(13) defines "resident relative," in relevant part, as "a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household."  Scott argues that any "resident relative" is an "insured" under Colorado law and that, because Nationwide's policy denies coverage to Cahill, an insured under the "relative" provision of its policy, it must be declared void.  (*Id.* at 14.)

But Scott does not cite to any authority requiring that a liability insurance policy,

6

such as the one here, afford coverage to a resident relative without regard to the vehicle being driven at the time of the accident.  And to the extent Colorado law points one way or the other on this issue, it undercuts Scott's position.

Liability coverage is governed by section 10-4-619(1), C.R.S. 2023, which provides, in relevant part, that

> *[e]very owner of a motor vehicle* who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 6 *covering the said motor vehicle*, and any owner who fails to do so shall be subject to the sanctions provided under sections 42-4-1409 and 42-7-301, C.R.S., of the "Motor Vehicle Financial Responsibility Act".

(Emphasis added.)  Pursuant to section 10-4-620, C.R.S. 2023,

> the basic coverage required . . . is legal liability coverage for bodily injury or death arising out of *the use of the motor vehicle* to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one accident and for property damage arising out of *the use of the motor vehicle* to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident.

(Emphasis added.)

Simply put, sections 10-4-619 and 10-4-620 require that an owner of a motor vehicle obtain a liability policy insuring "the motor vehicle" for certain bodily injury and property damage limits.  Nothing in the statutes requires an owner to obtain or an insurer to provide liability insurance for bodily injury or property damage caused by an

7

"insured" regardless of the vehicle being used. *See Anderson*, 260 P.3d at 77 (section 10-4-620 "does not specifically state *who* must be insured") (emphasis added).

Consistent with this reading of the liability insurance statutes, and contrary to Scott's assertion, Colorado caselaw recognizes that liability coverage may be restricted to the operation of certain vehicles. *See Apodaca*, 255 P.3d at 1103 ("A primary liability policy that covers automobiles or motor vehicles protects the insured from liability for damages arising from the ownership, maintenance, or use of specific automobiles."); *DeHerrera*, 30 P.3d at 175 (if a motorist insures a vehicle for liability coverage, their policy affords protection to all members injured by negligent conduct arising out of the use of the motor vehicle); *cf. Robles*, 271 P.3d at 595 (a liability insurance policy exclusion for vehicles owned by or available for the regular use of the named insured but not listed in the policy is permissible). The effect of Nationwide's vehicle-based coverage exclusion is exactly that—it restricts liability coverage to the use of certain vehicles.

Still, in an attempt to prove that Nationwide's policy dilutes insurance coverage mandated by Colorado law, Scott directs the Court to caselaw analyzing coverage in the UM/UIM context. (ECF No. 33 at 7.) But the language of the governing statutes and the policy reasons for each of these types of coverage are markedly different. The Court is thus not persuaded to import legal concepts unique to UM/UIM coverage into the liability coverage context.

The UM/UIM statute provides:

> [A]n automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of

8

> the ownership, maintenance, or use of a motor vehicle, . . . must provide coverage or supplemental coverage, . . . *for the protection of persons insured under the policy* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting from a motor vehicle accident.

§ 10-4-609(1)(a)(I), C.R.S. 2023 (emphasis added).

Notably, the UM/UIM statute first recognizes that, consistent with sections 10-4-619 and -620, automobile liability policies insure against losses resulting from "the . . . use of a motor vehicle" rather than, for example, from the conduct of an insured. § 10-4- 609(1)(a)(I). Then, the statute imposes a requirement that such policies include UM/UIM coverage "for the protection *of persons* insured under the policy." *Id.* (emphasis added). The difference in language associated with each type of coverage is significant.

As the Colorado Supreme Court explained in *DeHerrera*, the phrase "persons insured under the [liability] policy" "means that insurers must provide UM/UIM coverage for the protection of persons insured under the liability policy that the insurer is issuing." 30 P.3d at 175 (citation omitted). The public policy behind such coverage is "to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *Id.* at 174 (quoting Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333). To that end, UM/UIM coverage "furthers the legislature's public policy of 'assur[ing] the widespread availability . . . of insurance protection against financial loss caused by negligent financially irresponsible motorists.'" *Essentia Ins. Co. v. Hughes*, 2024 CO 17, ¶ 28 (quoting *DeHerrera*, 30 P.3d at 174).

9

The Colorado Supreme Court reasoned that, because UM/UIM insurance "is designed to protect an innocent insured as if the person at fault had been insured for liability, then an injured insured is covered by UM/UIM insurance 'whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist.'" *DeHerrera*, 30 P.3d at 175 (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So. 2d 229, 238 (Fla. 1971)). The court held that the language of the UM/UIM statute, combined with the purpose for UM/UIM coverage, "require that UM/UIM insurance apply to an insured person when injured by a financially irresponsible motorist, irrespective of the vehicle the injured insured occupies at the time of injury." *Id.* at 176.

Following *DeHerrera*, courts have voided insurance policies that have restricted UM/UIM coverage to "insureds" defined more narrowly than the statutory definition. *See Pacheco v. Shelter Mut Ins. Co.*, 583 F.3d 735, 738 (10th Cir. 2009) (relying on a provision of the Colorado Auto Accident Reparations Act (No-Fault Act), §§ 10-4-701 to -726 (repealed effective July 1, 2003), to conclude that, where Colorado statute defines "insured" as someone who is a resident relative, a policy that attempts "*to exclude from UM/UIM coverage* vehicle-owning relatives meeting that definition is void and unenforceable") (emphasis added); *Grippin*, ¶ 23 (a policy that defined "resident relative" as a relative who resided "primarily" with the named insured impermissibly limited statutorily mandated UM/UIM coverage).

But, as best the Court can tell, no court has voided a *liability policy* for a similar reason. *See Anderson*, 260 P.3d at 77 (contrasting section 10-4-620, which "does not specifically state who must be insured," with the provisions of the No-Fault Act on which the *Pacheco* court relied, and upholding a definition of "insured" that was restricted to

10

use of a "covered auto").  The differences in the definition of "insured" in the liability context, and a converse lack thereof in the UM/UIM context, makes sense given the distinction between the coverages—UM/UIM coverage covers "persons insured" under the policy, *see* § 10-4- 609(1), whereas liability coverage covers "the motor vehicle," *see* § 10-4-619(1).

Because "UM/UIM coverage is personal, rather than vehicle specific," the coverage "travels with" an insured injured by an uninsured or underinsured motorist. *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 746 (Colo. App. 2002); *see also Massingill*, 176 P.3d at 823 ("UM/UIM coverage follows the person rather than a particular vehicle.").  In contrast, liability coverage follows the vehicle, not the person. *See DeHerrera*, 30 P.3d at 175 (discussing when a motorist "insures *a vehicle* for liability coverage") (emphasis added).  This critical distinction, which finds its roots in the plain language of the respective statutory provisions, explains why a division of the Colorado Court of Appeals held that an "owned but not insured" exclusion, as applied to UM/UIM coverage, was void as against public policy.  *See Jaimes*, 53 P.3d at 745, 747. The *Jaimes* division did not discuss the use of such an exclusion outside the UM/UIM context, *see id.*, and another division of that same court later upheld such an exclusion as applied to liability coverage, *see Robles*, 271 P.3d at 595.

In the Court's view, allowing such an exclusion in the liability context makes sense because the purpose of liability coverage is to protect "the insured from liability for damages arising from the ownership, maintenance, or use of *specific automobiles*." *Apodaca*, 255 P.3d at 1103 (emphasis added).  It follows, then, that excluding coverage for a family member's use of a car that the family member owns and that is or should be

11

separately insured "'is not uncommon,' is 'legally sound and [is] supported by policy.'" *Robles*, 271 P.3d at 595 (citation omitted); *see also Massingill*, 176 P.3d at 822 ("[T]he risks in insuring against uninsured and underinsured motorists are very different from those taken into account in the liability provisions of a policy.").

Notwithstanding all this, Scott insists that, because section 10-4-609 "requires insurers to offer UM/UIM coverage to a class *as extensive as* the class covered under the liability provision of an automobile insurance policy," the reverse must also be true. *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 96 (Colo. 1995) (emphasis added). (ECF No. 33 at 7.)  As the Court understands her argument, Scott interprets this language to mean that, just as UM/UIM coverage must cover a named insureds' resident relatives, irrespective of what vehicle is occupied during a collision, so too must liability coverage.  (*Id.*)

But, as before, Scott's cited authority does not support this argument.  The Court understands liability coverage as setting the threshold standard that UM/UIM coverage must meet to the same extent—not the other way around.  That is, the "co-extensive" principle described in *Aetna* does not, to the Court's mind, proscribe what exclusions an insurer can include in a liability policy in the first instance.  *See Massingill*, 176 P.3d at 822 (concluding that, where the liability policy permissibly excluded the plaintiff as an insured, the insurance agency "could also exclude him from UM/UIM coverage without violating public policy"); *see also Auto-Owners Ins. Co.*, 893 F.3d at 733 (observing that, under Colorado law, "if an insurer excludes a resident relative . . . from liability coverage, it may also exclude that person from UM/UIM coverage").

In sum, because of the contrasting statutory language and purposes for liability and UM/UIM coverage, the Court is not persuaded to rely on UM/UIM concepts to void Nationwide's policy narrowing coverage based on the use of specific vehicles. As a result, the Court concludes that Nationwide's policy does not dilute any liability coverage mandated by Colorado statutes and is not void as against public policy.

## V. CONCLUSION

For all these reasons, the Court rules as follows:

1. Nationwide's motion for summary judgment (ECF No. 17) is GRANTED, and Scott's cross motion for summary judgment (ECF No. 29) is DENIED;

2. Judgment shall enter in favor of Nationwide and against Scott on all of Scott's claims;

3. Nationwide shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and

4. The Clerk shall terminate this action.

Dated this 13th day of August, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge